**Case No. 25-273**

**THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

STATE OF ARIZONA,

*Plaintiff-Appellant,*

*v.*

UNITED STATES INTERNAL REVENUE SERVICE, *et al.*,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the District of Arizona

No. 2:24-cv-00355-GMS

**STATE OF ARIZONA'S REPLY BRIEF**

Joshua D. Bendor (AZ Bar No. 031908)
Alexander W. Samuels (AZ Bar No. 028926)
Clinten N. Garrett (AZ Bar No. 022457)
Kathryn E. Boughton (AZ Bar No. 036105)
OFFICE OF THE ARIZONA
   ATTORNEY GENERAL
2005 N. Central Ave., Phoenix, AZ 85004
(602) 542-3333
Joshua.Bendor@azag.gov
Alexander.Samuels@azag.gov
Clinten.Garrett@azag.gov
Kathryn.Boughton@azag.gov
ACL@azag.gov

*Counsel for State of Arizona*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..........................................................................iiii

INTRODUCTION ...................................................................................1

ARGUMENT ..........................................................................................2

I.    The IRS's standing arguments are unavailing. ........................................2

    A.    Arizona alleged sovereign injuries that establish standing..................................................................................3

        1.    The IRS cannot evade its unlawful and discriminatory taxation of nonincome by labeling it a "merits issue." ..........................................3

        2.    The IRS contradicts the district court's rationale for dismissing the case. ..........................................7

    B.    Arizona's tax-loss injury establishes standing............................12

        1.    The IRS mischaracterizes controlling authority. ...............12

        2.    The IRS's pleading-sufficiency arguments are unavailing..........................................................................15

II.    There is no alternative basis to affirm the district court's dismissal...........................................................................................17

    A.    The *Regan* and *Williams Packing* exceptions to the Anti-Injunction Act both apply here........................................17

        1.    The *Regan* exception applies.................................................18

        2.    The *Williams Packing* exception also applies. .....................22

    B.    The IRS's sovereign immunity arguments are meritless............23

    C.    Arizona has stated meritorious claims.........................................26

i

1.    The State pled a meritorious APA claim. ..........................26

2.    The IRS's excuses for illegally taxing nonincome
      are meritless. ...............................................................28

3.    The IRS's exclusion determinations were erratic
      and unreasoned. ...............................................................29

CONCLUSION ....................................................................32

CERTIFICATE OF COMPLIANCE ..................................................33

CERTIFICATE OF SERVICE ........................................................34

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arias v. DynCorp*,
  752 F.3d 1011 (D.C. Cir. 2014)...........................................................13

*Arizona v. Yellen*,
  34 F.4th 841 (9th Cir. 2022) ....................................................... 3, 4, 6

*Bennett v. Spear*,
  520 U.S. 154 (1997).............................................................................23

*City of Oakland v. Lynch*,
  798 F.3d 1159 (9th Cir. 2015) ............................................................13

*Commissioner v. Glenshaw Glass Co.*,
  348 U.S. 426 (1955)...............................................................................4

*Confederated Tribes & Bands of Yakama Indian Nation v. Alcohol & Tobacco Tax
  & Trade Bureau*,
   843 F.3d 810 (9th Cir. 2016) ............................................... 19, 20, 21

*Diamond Alternative Energy, LLC v. Env't Prot. Agency*,
  145 S. Ct. 2121 (2025)............................................................... 2, 14, 15

*Encino Motorcars, LLC v. Navarro*,
  579 U.S. 211 (2016) ....................................................................... 26, 27

*Enochs v. Williams Packing & Nav. Co.*,
  370 U.S. 1 (1962) ....................................................................... 18, 22, 23

*F.C.C. v. Fox Television Stations, Inc.*,
  556 U.S. 502 (2009)..............................................................................26

*Fairbanks North Star Borough v. U.S. Army Corps of Engineers*,
  543 F.3d 586 (9th Cir. 2008) ...............................................................25

iii

*Florida v. Mellon,*
    273 U.S. 12 (1927) ........................................................................ 7, 13

*Hirsch v. Commissioner,*
    115 F.2d 656 (7th Cir. 1940) ................................................................26

*Ipsen Biopharmaceuticals, Inc. v. Azar,*
    943 F.3d 953 (D.C. Cir. 2019) .............................................................24

*J&G Sales Ltd. v. Truscott,*
    473 F.3d 1043 (9th Cir. 2007) ..................................................... 27, 28

*Maines v. Commissioner,*
    144 T.C. 123 (2015) ..................................................... 3, 4, 6, 22, 28

*Navajo Nation v. Dep't of the Interior,*
    876 F.3d 1144 (9th Cir. 2017) ..................................................... 23, 26

*New York v. Yellen,*
    15 F.4th 569 (2d Cir. 2021) ........................................... 13, 16, 17, 21

*North Cascades Conservation Council v. U.S. Forest Service,*
    136 F.4th 816 (9th Cir. 2025) ..............................................................27

*Nw. Austin Mun. Util. Dist. No. One v. Holder,*
    557 U.S. 193 (2009) .............................................................................26

*Ohio v. EPA,*
    98 F.4th 288 (D.C. Cir. 2024) ...............................................................5

*Oregon Nat. Desert Ass'n v. U.S. Forest Serv.,*
    465 F.3d 977 (9th Cir. 2006) ...............................................................23

*Pennsylvania v. Kleppe,*
    533 F.2d 668 (D.C. Cir. 1976) .............................................................13

*Prutehi Litekyan: Save Ritidian v. United States Dep't of Airforce,*
    128 F.4th 1089 (9th Cir. 2025) ............................................................25

*Seattle Pac. Univ. v. Ferguson,*
    104 F. F.4th 50 (9th Cir. 2024) .............................................................8

iv

*South Carolina v. Regan,*
 465 U.S. 367 (1984) ................................................................ 17, 18, 19, 20, 21

*State of Cal., Dep't of Educ. v. Bennett,*
 833 F.2d 827 (9th Cir. 1987) ..............................................................24

*Thompson v. Isagenix Int'l LLC,*
 849 F. App'x 712 (9th Cir. 2021) ......................................................16

*Washington v. FDA,*
 108 F.4th 1163 (9th Cir. 2024) ..........................................................17

*Waterkeeper All. v. United States Env't Prot. Agency,*
 140 F.4th 1193 (9th Cir. 2025) ..........................................................24

*Wyoming v. Oklahoma,*
 502 U.S. 437 (1992) .............................................................. 12, 14, 15

*XY Planning Network, LLC v. United States Sec. & Exch. Comm'n,*
 963 F.3d 244 (2d. Cir. 2020) ........................................................ 13, 14

**Statutes**

26 U.S.C. § 139 ............................................................................... 9, 30

**Other Authorities**

Rev. Rul. 98-19, 1998-1 C.B. 840 (1998) ............................................30

## INTRODUCTION

The IRS's explanations for subjecting Arizona to unlawful and discriminatory tax treatment continue to contradict its own legal authority, and those explanations also now contradict the district court's rationale for dismissing this case on standing grounds.

The district court believed—and improperly held at the pleadings stage—that "the IRS applied the same 'complex fact intensive inquiry' in deciding whether to impose federal taxes on the Arizona Rebate, just as any other state." ER-011. The IRS cannot defend this finding, so it instead now asserts (at 6-7) that its February 2023 determinations "nowhere … indicate[d] that the IRS had made" a fact-intensive "determination for any of the 17 states' payments"—and the IRS now defends its disparate treatment of Arizona as a matter of selective "forbearance."

The IRS thereby effectively concedes that the decision below cannot be affirmed on the basis that it was made. And the IRS's alternative "forbearance" defense amounts to an acknowledgment that Arizona's core allegations are correct: Arizona enacted Tax Rebate legislation during the COVID emergency that was materially identical to other states' tax refund programs, but Arizona was treated less favorably than those other states.

1

"Courts should not make standing law more complicated than it needs to be." *Diamond Alternative Energy, LLC v. Env't Prot. Agency*, 145 S. Ct. 2121, 2141 (2025) (cleaned up). The IRS is free to advance its fact-sensitive arguments—e.g., that the "heart" of the COVID emergency occurred at a particular time, and that this timing justified inconsistent forbearance—at a later stage of the litigation. But the IRS's defenses in no way negate Arizona's pleading-stage claim that the IRS inflicted sovereign injuries on the State by interfering with its sovereign taxing prerogative in an illegal and discriminatory manner. Nor has the IRS offered any basis to reject Arizona's further allegation that the IRS's unlawful taxation of State residents caused specific tax-loss injury to the State.

Because the IRS cannot defeat standing with (dubious) merits arguments—and because there is no other basis to affirm the district court's dismissal—this Court should reverse.

## ARGUMENT

### I. The IRS's standing arguments are unavailing.

Contrary to the IRS's suggestion (at 23 n.4) that states are entitled to solicitude only in the context of environmental injury, states also enjoy "special solicitude" to challenge federal threats to their "sovereign

prerogative to tax [their] residents as [they] see[] fit." *Arizona v. Yellen*, 34 F.4th 841, 851 (9th Cir. 2022) ("*Yellen (AZ)*"). But reversing the district court's dismissal here does not hinge on any special solicitude. Rather, the decision should be reversed because there was "no reason under normal juristic standards for [the court] to dispute, deny, or discredit" Arizona's well-pled allegations concerning sovereign harm and tax-loss injury. *Id.*

The IRS now (at 43) characterizes its unlawful taxation as a "merits issue," disavows the district court's erroneous and improper factfinding, and claims the right to offer or not offer "forbearance" based on when it deemed the "heart of the pandemic" to have occurred. This is all far afield from whether Arizona has adequately alleged sovereign and tax-loss injuries that confer standing—and neither the district court nor the IRS has supplied any valid basis to dispute, deny, or discredit those allegations.

### A.    Arizona alleged sovereign injuries that establish standing.

#### 1.    The IRS cannot evade its unlawful and discriminatory taxation of nonincome by labeling it a "merits issue."

The IRS has repeatedly acknowledged that "the return of an overpayment of [a] recipient's State tax liability" is not "an accession to wealth," and is therefore not taxable income. ER-163. Yet, relying on *Maines*

*v. Commissioner*, 144 T.C. 123 (2015), the IRS claimed the right to tax every dollar that Arizona returned to its taxpayers because the Tax Rebate was "not capped at the amount of tax previously paid." ER-178.

The IRS now argues (at 43) that whether it illegally taxed nonincome "is a merits issue … not a disparate treatment issue," but that does not make any sense. Because "standing in no way depends on the merits," *Yellen (AZ)*, 34 F.4th at 849, courts will often find that a state has standing to challenge federal action, even when the claim ultimately fails on the merits. Where, as here, the IRS lacks any valid merits defense to the claim, that can only bolster Arizona's standing.

Contradicting its earlier characterization of *Maines*, the IRS now concedes (at 61), as it must, that the case held that only the "*excess portion*" of an uncapped tax credit is a taxable accession to wealth. Opp. Br. at 61 (quoting *Maines*, 144 T.C. at 136); *compare with* ER-162-63 (inaccurately asserting that *Maines* held that where a credit amount is not capped, "the payment [is] not in substance a refund for overpayment of State taxes and [is] therefore includable in Federal gross income").

*Maines'* holding comports with the fundamental conception of income as an "accession to wealth" under *Commissioner v. Glenshaw Glass Co.*, 348

4

U.S. 426 (1955), as well as with common sense. If Jane pays $200 in State taxes and then receives a $250 tax rebate back from the State, it is fundamentally wrong to say that Jane received $250 of income (as opposed to $50 of income). And the average Arizona taxpayer paid taxes far in *excess* of the tax rebate he or she received. ER-284 ¶ 72; ER-193 ¶ 4 (average tax liability of about $1,700, against an average Rebate amount of $370).

Even as the IRS characterizes its unlawful taxation as a merits issue, it asserts (at 42-43) that "the IRS did not discriminate against Arizona" because it "treats only programmatically capped payments as state-tax refunds, without regard to the circumstances of individual recipients." But that is no more a defense to discrimination than it would be for the IRS to explain that it treats state-tax refunds paid on Tuesdays as nontaxable and refunds paid on other days as taxable. If certain states can return money to taxpayers under the lawful application of the income rules, while Arizona taxpayers are burdened with unlawful taxation, the effect is discriminatory. *See Ohio v. EPA*, 98 F.4th 288, 307 (D.C. Cir. 2024) (states establish standing to pursue an equal sovereignty claim by pleading a violation that is "akin to the type of dignitary injury recognized in equal protection cases"). And even absent discrimination, the federal government's threat to a state's "sovereign

5

prerogative to tax its residents as it sees fit" confers standing. *Yellen (AZ)*, 34 F.4th at 851 (cleaned up).

The IRS's effort (at 60-61) to distinguish *Maines* as dealing with "tax credits," not "refunds," is also a nonstarter. *Maines* is not an obscure case that the State located and urged the district court to adopt. Rather, it is *the* case that the IRS chose to rely on to guide and defend its tax-refund determinations. *See* ER-162-63 (Notice 2023-56); ER-178-79 (letter to Attorney General Mayes). The IRS cannot purport to rely on specific authority for its decisions, and then disavow that same authority when it is caught in an error. And as the district court correctly observed, the IRS is "arguing … a distinction without a difference," in any event. *See* ER-256:3–9.

The IRS's further suggestion (at 62) that the State is seeking advantage based on "labels" has things exactly backwards. Taking the previous illustration (and setting aside potential exclusions), Arizona has never suggested that Jane's full $250 rebate should be nontaxable because the State called its payments to taxpayers "rebates." Arizona merely wants to be able to return money to taxpayers and to see it taxed in accord with its "substantive character" and "economic reality," as the IRS (at 62) purports to favor.

6

But the IRS's true position now appears to be (at 62) that "treating state payments as state-tax 'refunds' only if state payments are capped at the amount of previously paid state taxes" is a "sensible test." The IRS never mentioned this "sensible test" below, and the IRS does not get to invent new tests—sensible or otherwise—that are irreconcilable with the fundamental definition of income and with the legal authority that it purported to treat as controlling.

### 2. The IRS contradicts the district court's rationale for dismissing the case.

The district court recognized that "the Constitution … requires … that the law shall be uniform in the sense that by its provisions the rule of liability shall be alike in all parts of the United States." ER-011 (quoting *Florida v. Mellon*, 273 U.S. 12, 17 (1927)). Although *Mellon* concerned a uniform act "passed by Congress," 273 U.S. at 17, while this case concerns administrative determinations, the district court dismissed under *Mellon* by finding that "the IRS applied the same 'complex fact intensive inquiry' in deciding whether to impose federal taxes on the Arizona Rebate, just as any other state." ER-011; *see also id.* at ER-006 (crediting the IRS's representation that it performed a fact-intensive inquiry); ER-011 n.2 (same).

7

Even if the IRS ultimately could have demonstrated that it applied "the same" analysis to all states to make its tax determinations, the district court erred by crediting the IRS's argument—or what it perceived to be the IRS's argument—at the pleading stage. *See, e.g., Seattle Pac. Univ. v. Ferguson*, 104 F. F.4th 50, 57 (9th Cir. 2024) (complaint's allegations must be "accept[ed] as true at the pleading stage" in assessing standing).

In lieu of defending this error, the IRS has opted instead to disavow the district court's holding and to argue that its February 2023 determinations "nowhere … indicate[d] that the IRS had made" a fact-intensive "determination for any of the 17 states' payments." Opp. Br. at 6-7; *id.* at 36 (representing that it "did not determine that the special payments by 17 states were nontaxable under the general welfare and disaster relief exclusions").

The IRS now therefore asserts (at 42) that it is not "fruitful to discuss the income qualifications in the 2022 programs enacted during the heart of a declared disaster"—i.e., the IRS cannot dispute that the programs it approved for exclusions were materially indistinguishable from Arizona's program, so it wishes to foreclose any further attention to its inconsistencies.

8

But the defense that the IRS now embraces (at 16-17)—that it was entitled to selectively "grant[] a one-time forbearance for payments made during an emergency that would soon end"—is no defense at all. Rather, the IRS is conceding Arizona's core allegation—that it treated Arizona less favorably than other states—and attempting to justify the disparate treatment on the basis that it could grant "forbearance" to some states, but not to others. This is unavailing for multiple reasons.

First, as discussed previously, the IRS has no discretion to tax nonincome. When the IRS taxed the entirety of the Arizona Tax Rebate without regard to taxes actually paid by individual taxpayers, it was not withholding forbearance—it was acting unlawfully.

Second, as to exclusions, the "forbearance" rationale leaves questions of fact about why the IRS denied similar forbearance to Arizona—and all the more so, given the IRS's claim (at 42) that its "forbearance was consistent with I.R.C. § 139(b)(4), which allowed the presumption that the need prong of the general welfare exclusion was satisfied for all individuals affected by the disaster." It is undisputed that Arizona enacted the Tax Rebate while the disaster declaration was still in effect (albeit as the clock was running out). If the presumption under § 139(b)(4) disposed of the need to flyspeck the

9

programs, then why didn't Arizona receive the benefit of the same presumption?

In trying to rationalize this, the IRS repeatedly (e.g., at 35) calls 2022 the "heart of th[e] emergency," but that is pure fact-based characterization. The IRS never explains how it is measuring the "heart of the emergency," or why this characterization has any purported legal significance at the pleadings stage.

The characterization, moreover, rings particularly hollow given that the February 2023 determinations explicitly referred to "the pandemic *and its associated consequences.*" ER-100 (emphasis added). While the IRS asserts (e.g., at 12) that it does not credit inflation as supporting the disaster relief exclusion, that is a post hoc rationalization with zero grounding in law. And it again shows how the IRS treated Arizona differently. *See* ER-101; ER-122 (Delaware received exclusion for refund "intended to promote the general welfare of Delawareans emerging from the COVID-19 pandemic and facing higher prices at the grocery store and gas pump").

The IRS's additional rationalizations are actually admissions. The IRS says (at 39) that the "calmer environment" in 2023 allowed it "to consider Arizona's program on its merits and determine that Arizona's payments did

not qualify for any exclusion from income." And it indicates (at 40) that Arizona might have "received the same forbearance as [the other] states had Arizona enacted its program" earlier. This suggests that the key to favorable treatment was not necessarily to implement a tax refund with particular terms, or even to be in the "heart of the emergency"—but rather to be in a crowd. It is hard to imagine a more irrational basis for the IRS to make crucial determinations about state tax policy.[1]

Third, there are questions of fact about the "forbearance" rationale's validity. The IRS (at 36) characterizes its February 2023 guidance as using "the language of forbearance," but that is just a delicate way of admitting that the guidance is cagey about exactly how the IRS made its determinations. And even as the IRS disavows having done any analysis to support the February 2023 determinations, it plainly did enough to determine that 17 states were entitled to exclusions, while four states were

---

[1] The IRS also notes (at 40) that it denied exclusions to Minnesota in 2023, which only bolsters the impression that its substantive critique of Arizona's program—e.g., that referencing record inflation in the legislation was insufficient, ER-190-91—was pretextual.

11

entitled to the lawful application of the rule that tax refunds are generally nontaxable.

Nor, in any event, can the IRS credibly suggest that the February 2023 determinations put Arizona and other states on notice that materially identical programs would be treated differently during the COVID emergency. After all, the district court heard detailed argument on these issues and was left with the impression that the IRS had "applied the same 'complex fact intensive inquiry'" to all states. ER-011.

### B.     Arizona's tax-loss injury establishes standing.

Arizona alleges that the IRS unlawfully took $20.8 million from State residents and thereby cost the state approximately $480,000 in transaction privilege tax revenue. ER-285 ¶¶ 74-77; ER-197–99 ¶¶ 3-6. Contrary to the IRS's arguments, this claim is specific and nonspeculative.

### 1.     The IRS mischaracterizes controlling authority.

The IRS argues (at 15) that "[b]ecause federal policy necessarily affects the states differently, the incidental or indirect fiscal effects thereof do not give standing." This is misguided in multiple respects.

To start, it sidesteps the guiding principle that the "loss of specific tax revenues" establishes a state's standing. *Wyoming v. Oklahoma*, 502 U.S. 437,

448 (1992). And it also ignores the persistent lesson across a broad swath of tax-loss cases: pleading sufficiency matters. Thus, when a plaintiff alleges specific dollar amounts of tax loss and those allegations are supported by "[b]asic economic logic," it has standing. *See, e.g., New York v. Yellen*, 15 F.4th 569, 577 (2d Cir. 2021) ("*Yellen (NY)*"); *City of Oakland v. Lynch*, 798 F.3d 1159, 1163 (9th Cir. 2015).

On the other hand, when allegations are generalized and vague, a plaintiff will not have standing. *See, e.g., Mellon*, 273 U.S. at 17-18 (insufficient to allege that federal inheritance tax would "induc[e] potential taxpayers to withdraw property from the state, thereby diminishing the subjects upon which the state power of taxation may operate"); *Arias v. DynCorp*, 752 F.3d 1011, 1015 (D.C. Cir. 2014) (no standing based on plaintiffs' generalized allegation that defendants' conduct "cost them tax revenue," resulting in budget deficits); *Pennsylvania v. Kleppe*, 533 F.2d 668, 671 n.14 (D.C. Cir. 1976) (no standing where "[p]etitioners' allegations of proprietary injury [were] sketchy and uncertain," and they raised tax loss at oral argument).

Nor will plaintiffs have standing where there is no logical nexus between the underlying conduct and the alleged tax loss. *See, e.g., XY Planning Network, LLC v. United States Sec. & Exch. Comm'n*, 963 F.3d 244, 250-

13

53 (2d. Cir. 2020) (no standing based on states' allegation that a fiduciary regulation would "diminish their tax revenues from investment income by allowing broker-dealers to provide conflicted investment advice to customers").

Whether the tax loss is "incidental" is not central to this analysis. In *Wyoming,* the Supreme Court expressly rejected the notion that Wyoming lacked tax-loss standing because private mining companies could have sued Oklahoma. 502 U.S. at 451. And the Court also rejected the notion that Wyoming lacked standing because the tax loss's dollar value was too small. *Id.* at 453 n.11; *see also, e.g., Diamond Alternative Energy*, 145 S. Ct. at 2135 ("Even one dollar of additional revenue for the fuel producers would satisfy the redressability component of Article III standing.") (cleaned up).

Further, in referencing "direct injury," the Court in *Wyoming* was not making a normative judgment about the causal strength of Wyoming's tax-loss claim. Rather, it was distinguishing authority that Oklahoma had cited on the basis that it "involved claims of *parens patriae* standing rather than allegations of direct injury to the State itself." *Id.* at 448-49. Wyoming, by contrast, had alleged "a direct injury"—i.e., an injury to the state, as opposed to a *parens patriae* claim—"in the form of a loss of specific tax revenues." *Id.*

14

at 448; *see also id.* at 451 (same). As Arizona discussed in its opening brief (at 34), *all* state tax-loss claims involve a causal chain, so it makes no sense to suggest that a state could lack standing because another party was injured first. *Cf. Diamond Alternative Energy*, 145 S. Ct. at 2139 (redressability requires "simply … a predictable chain of events") (cleaned up).

### 2. The IRS's pleading-sufficiency arguments are unavailing.

The IRS argues (at 29-30) that Arizona's claim "depend[s] on assumptions" that taxpayers would not have spent the rebates on "vacations out of state, paying down debt, acquiring nontaxable items, or increasing their savings," but that is specious. Arizona's calculation of its tax loss—like most economic analysis—is based on how people behave in the aggregate given known data, not on how specific individuals act. *See* ER-197-99. And even as the IRS improperly nitpicks this calculation at the pleadings stage, it cannot plausibly suggest that the calculation lacks economic logic, or that the actual loss might be zero.

Further, while constitutional standing does not require plaintiffs to "introduce evidence from expert economists … to show how third parties would likely respond to" government action, *Diamond Alternative Energy*,

15

145 S. Ct. at 2139, Arizona supplemented its complaint with two declarations from an Arizona Department of Revenue economist that explain its tax-loss calculation. ER-192-99.[2] Arizona's analysis of lost tax revenue was not conclusory.

Contrary to the IRS's further suggestion (at 15), it also does not matter for standing purposes whether "federal policy necessarily affects the states differently." For one thing, Arizona is not complaining about a uniform law's disparate impact—it is complaining about the IRS adopting different federal policies for different states without a reasoned basis.

And regardless, the IRS is conflating standing and the merits. In *Yellen (NY)*, the Second Circuit held that New York and other states had standing

---

[2] The IRS suggests, without argument (at 31), that there might be some basis for the Court to disregard the supporting declarations. The IRS did not challenge these declarations below, and thereby waived any objection to them on appeal. And regardless, Arizona was entitled to rely on declarations in opposition to a Rule 12(b)(1) motion. *E.g., Thompson v. Isagenix Int'l LLC*, 849 F. App'x 712, 712 (9th Cir. 2021) (unpublished) ("A court may consider evidence outside the pleadings when ruling on a Rule 12(b)(1) motion to dismiss …").

16

to challenge Congress's cap on the state and local tax deduction because they alleged specific tax loss through a logical causal chain. 15 F.4th at 575-77. But this did them no good on the merits, where the inquiry turned to whether the states were merely raising a policy disagreement about a uniform law they disfavored. *Id*. at 582-84.

The IRS (at 34) can only "submit that [*Yellen (NY)*] was incorrectly decided and that the causation chain therein would not pass muster under this Court's more recent" decision in *Washington v. FDA*, 108 F.4th 1163 (9th Cir. 2024). But that is apples and oranges. *Washington* did not involve alleged tax injury (the word "tax" does not even appear in the case). And the alleged economic injury in *Washington*—that eliminating an abortion drug's in-person dispensing requirement would "increase[] costs to the state's Medicaid system," *id*. at 1174—is exactly the kind of generalized and attenuated allegation that courts typically reject.

## II.     There is no alternative basis to affirm the district court's dismissal.

### A.     The *Regan* and *Williams Packing* exceptions to the Anti-Injunction Act both apply here.

Contrary to the IRS's arguments, *South Carolina v. Regan*, 465 U.S. 367 (1984), involved a state's challenge to federal taxation that is materially

17

indistinguishable from Arizona's case here. And because the IRS lacks any viable defense to its illegal taxation of nonincome, the *Enochs v. Williams Packing & Nav. Co.*, 370 U.S. 1 (1962), exception to the Anti-Injunction Act (AIA) also applies.

### 1.    The *Regan* exception applies.

*Regan* created an exception to the AIA for "actions brought by aggrieved parties for whom [Congress] has not provided an alternative remedy." 465 U.S. at 378. And *Regan* expressly grounds its analysis in whether the "plaintiff"—not some alternative party—has an alternative means to challenge a tax's validity. 465 U.S. at 373. As the Supreme Court explained, "Congress did not intend the Act to apply where an aggrieved party would be required to depend on the mere possibility of persuading a third party to assert his claims." *Id.* at 381.

The IRS's efforts to distinguish *Regan* only highlight the extent to which the facts there are materially indistinguishable from those here. *Regan* concerned South Carolina's challenge to the imposition of a new tax on state bearer bond interest payments. 465 U.S. at 370. As the IRS explains, South Carolina "assert[ed] a sovereign interest in issuing <u>bearer or registered</u> <u>bonds</u> as it chose," and "thus alleged a direct injury to a sovereign interest

18

that existed separately from the <u>bondholders'</u> interest in avoiding taxation." Opp. Br. at 54 (cleaned up and underlining added).

Here, Arizona alleged a sovereign interest in issuing a <u>tax rebate</u> as it chose, and thus alleged a direct injury to a sovereign interest that existed separately from the <u>rebate recipients'</u> interest in avoiding taxation. *See* ER-286 ¶ 81 (IRS is "targeting … Arizona and its taxpayers in a manner that deprives Arizona of its right to make informed budgetary decisions"). The purported distinction is nonexistent.

The IRS next argues (at 55) that "[t]hose who paid federal tax on the Arizona payments felt a direct economic impact" — "[s]o unlike in *Regan*, the taxpayers here are directly affected, whereas any injury to Arizona would be indirect." Again, this is an imagined distinction, given that a tax on state bearer bond interest — like a tax on a state tax rebate — also falls on taxpayers, not on the state. *See Regan*, 465 U.S. at 370–71 (explaining that Congress amended the Internal Revenue Code to restrict the types of state bond interest "exempt[] from a taxpayer's gross income").

The IRS's related reliance on this Court's decision in *Confederated Tribes & Bands of Yakama Indian Nation v. Alcohol & Tobacco Tax & Trade Bureau*, 843 F.3d 810 (9th Cir. 2016), is also unavailing. The IRS asserts (at 55) that

"*Yak[a]ma Nation* … disposes of the argument that *Regan* required Arizona to be able to litigate its claims on its own behalf," but that is overstated. *Regan* expressly holds that "the [AIA] was intended to apply only when Congress has provided an alternative avenue for an aggrieved party to litigate its claims on its own behalf." 465 U.S. at 381. While this Court characterized this language as "broad" and determined that the facts in *Yakama Nation* militated against its strict application, 843 F.3d at 815 n.2, *Regan* is still binding Supreme Court precedent.

Regardless, the notion that Arizona's case parallels *Yakama Nation* more closely than it parallels *Regan* does not withstand even minimal scrutiny. As Arizona pointed out in its opening brief, and as the IRS ignored in opposition, *Yakama Nation* involved a tax on private tobacco income earned by a private tobacco manufacturer—not a tax on a *state* payment. 843 F.3d at 812. This alone renders Arizona's sovereign interest here manifestly greater than the tribe's interest in *Yakama Nation*, and it should be dispositive.

Further, in *Yakama Nation* the tribe and the private plaintiffs simultaneously brought identical claims seeking identical relief, leaving no doubt that those claims were being judicially reviewed, irrespective of the

20

tribe's participation. And the parties' simultaneous claims also resolved whether the private plaintiffs had an "incentive" to sue. *See id.* at 815.

The IRS asserts that "Arizona need not struggle to convince a taxpayer to raise its claims," Opp. Br. at 56 (cleaned up), but reality trumps this bare speculation. The State is unaware of any actual taxpayer refund suit challenging the IRS's taxation of the Tax Rebate, and the IRS has cited no such case. Nor should this be surprising, given the expense of litigation and the relatively small dollars at stake for individual taxpayers.

Further, as discussed in the State's opening brief (at 45), individual taxpayers cannot, in any event, vindicate the State's sovereign rights. *See Yellen (NY)*, 15 F.4th at 579 (taxpayer suits cannot "free the States from what they allege is federal oversight over their state fiscal policies"); *Regan*, 465 U.S. at 380 ("instances in which a third party may raise the constitutional rights of another are the exception rather than the rule").[3]

---

[3] Because *Yellen (NY)* involved a cap on a tax deduction, not a tax on a state payment, Arizona's claim falls more plainly under *Regan* than even the claim there did. Thus, contrary to the IRS's assertion (at 56), barring Arizona's claim under the AIA would indeed likely create a direct circuit split.

21

### 2.    The *Williams Packing* exception also applies.

As the IRS acknowledges, the *Williams Packing* exception to the AIA applies if equity jurisdiction exists and if there are "'no circumstances'" under which "the United States [can] ultimately prevail on the merits." Opp. Br. at 57 (quoting *Williams Packing*, 370 U.S. at 6-8). The IRS then argues, however, that Arizona cannot meet this standard because its "alleged injuries are derivative, and the affected taxpayers have legal remedies."

But that is wholly circular; the IRS is suggesting that the *Williams Packing* exception cannot apply because—according to the IRS—the *Regan* exception does not apply. That makes no sense, and it is contrary to the IRS's own acknowledgement (at 57) that *Williams Packing* looks to "the merits."

The IRS also argues (at 57-58) that *Williams Packing* allows for "the most liberal view of the law and the facts" in its favor, and requires it to show only "a good faith basis for its position." *See Williams Packing*, 370 U.S. at 7. Whatever subjective belief the IRS might have about the strength of its arguments, the reality is that the IRS relied on *Maines* to assert that a tax refund is fully taxable if it exceeds taxes paid, ER-162-63, when *Maines* indisputably holds the exact opposite. 144 T.C. at 136; ER-250:5-6 (IRS's

22

"explanation is severely wanting"). If *Williams Packing* has any teeth at all, it must apply in a case like this one.[4]

## B.    The IRS's sovereign immunity arguments are meritless.

Section 702 of the APA "enacted a broad, unqualified waiver for all non-monetary claims for relief against federal agencies." *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1172 (9th Cir. 2017). The IRS acknowledges this, ER-051 n.4, but nonetheless argues (at 50) that its action here lacked requisite finality under the APA. This is meritless.

An action is final if it (1) "mark[s] the consummation of the agency's decision-making process"; and (2) is "one by which rights or obligations have been determined or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–178 (1997) (cleaned up). "The finality element must be interpreted in a pragmatic and flexible manner." *Oregon Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 982 (9th Cir. 2006).

Here, the IRS first issued an oral determination, which Arizona challenged with a January 2024 letter. Responding to this letter, the former

---

[4] The IRS acknowledges that the AIA and the Declaratory Judgment Act "are similar in operation" and appears to concede that they will apply or not apply in tandem. Opp. Br. at 52 n.8; Br. at 47.

23

IRS Commissioner then made a "*determination* that the 2023 Arizona Families Tax Rebate *payments constitute income* to the recipients *for federal income tax purposes*" and stated that the "IRS is *applying the rules reflected in this letter … to Arizona*." ER-177, 179 (emphasis added).

While the IRS persists (e.g., at 18) in characterizing its determination as "advice," a letter that establishes an agency's official position is "a final agency action." *State of Cal., Dep't of Educ. v. Bennett,* 833 F.2d 827, 833 (9th Cir. 1987) (letter claiming authority to charge prejudgment interest "evince[d] the implementation of … policy" and was final); *Ipsen Biopharmaceuticals, Inc. v. Azar*, 943 F.3d 953, 959 (D.C. Cir. 2019) (similar). And agency action does not lack finality merely because the agency may "need to do something similar again in the future." *Waterkeeper All. v. United States Env't Prot. Agency*, 140 F.4th 1193, 1207 (9th Cir. 2025).

The IRS now admits that the letter includes "language indicating an ultimate position," but it nevertheless asserts that the determination did not "determine[] Arizona's legal rights and obligations, impose[] legal consequences on Arizona, or give[] Arizona an occasion for compliance or defiance." Opp. Br. at 51; *see also id.* (asserting that "the IRS's position has no legal consequence even for payment recipients"). This is untenable, as the

24

IRS's reliance on *Fairbanks N. Star Borough v. U.S. Army Corps of Eng'rs* shows by contrast to the facts here.

In *Fairbanks,* the plaintiff challenged a "jurisdictional determination" establishing the "agency's view that [plaintiff's] property contained waters of the United States and would be *subject to regulation* under the" Clean Water Act. 543 F.3d 586, 589 (9th Cir. 2008) (emphasis added). Here, by contrast, the IRS made a "determin[ation]" that immediately required Arizona taxpayers to pay millions of dollars in federal taxes, compelled Arizona to provide notice of the determination and to make Forms 1099 available to taxpayers, and caused the sovereign injury and tax loss that Arizona has alleged. *See* ER-181. This was unquestionably final agency action. *See, e.g., Prutehi Litekyan: Save Ritidian v. United States Dep't of Airforce*, 128 F.4th 1089, 1108-9 (9th Cir. 2025) (action final where it "marked an endpoint, not a starting point" and caused legal consequences with "a direct and immediate effect").

Further, while the IRS asserts (at 50) that Arizona "is proceeding directly under the APA," Arizona has alleged additional constitutional and statutory claims. ER-287-91. Because the APA "§ 704's final agency action

limitation applies only to APA claims," lack of finality would not bar these other claims in any event. *Navajo Nation*, 876 F.3d at 1172.

### C.     Arizona has stated meritorious claims.

Although Arizona alleged multiple statutory and constitutional claims, the IRS (at 58-59) specifically addresses only the State's APA claim. The IRS provides no plausible basis to dismiss this claim, let alone to dismiss other claims that it ignored. *See, e.g., Nw. Austin Mun. Util. Dist. No. One v. Holder*, 557 U.S. 193, 203 (2009) (recognizing equal sovereignty claim based on disparate treatment of the states); *Hirsch v. Comm'r*, 115 F.2d 656, 657–58 (7th Cir. 1940) (IRS violated the Revenue Act by treating credit that reduced the purchase price of property as taxable income).

### 1.     The State pled a meritorious APA claim.

The IRS's discussion of the APA (at 58-59) ignores the core of the state's claim: when an agency changes positions, it must provide a "reasoned explanation" for doing so with "good reasons for the new policy." *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009) (more detailed justification required where action "has engendered serious reliance interests that must be taken into account."); *see also, e.g., see Encino Motorcars,*

26

*LLC v. Navarro*, 579 U.S. 211, 221–22 (2016) (unexplained inconsistency in a changed agency policy is arbitrary and capricious).

The IRS—in correspondence and in litigation—has given only erratic and contradictory explanations for subjecting Arizona to disparate treatment. The former IRS Commissioner denied disparate treatment altogether. ER-179 (assuring Attorney General Mayes that it "is the IRS's priority to ensure that the rules concerning income inclusion and exclusion are applied fairly and consistently to every state payment and that the IRS is applying the rules reflected in this letter and in Notice 2023-56 to similar programs in other states as well as to Arizona"). And now in this appeal, the IRS is asserting the right to grant and withdraw "forbearance" as it chooses, and to only disclose its purported forbearance deep into litigation.

Cases like *North Cascades Conservation Council v. U.S. Forest Service*, 136 F.4th 816 (9th Cir. 2025), and *J&G Sales Ltd. v. Truscott*, 473 F.3d 1043, 1051-52 (9th Cir. 2007), that concerned a single, isolated administrative action therefore have little or no bearing on the issues in this case. But as the IRS acknowledges (at 59), *J&G Sales* requires that an agency's "path may reasonably be discerned" and that "its line-drawing" not be "irrational." Even if the IRS could make that showing at the summary judgment stage, as

27

the agency in *J&G Sales* did, 473 F.3d at 1044, it is not a matter that can be resolved on these pleadings.

It is also perplexing for the IRS to highlight (at 59) that an agency must "consider[] the relevant data and standards," immediately after disclaiming any reasoned analysis in connection with the February 2023 determinations. If the IRS forgoes consideration of data and standards when convenient and thereby subjects similarly situated parties to disparate treatment, that further validates Arizona's claim.

### 2. The IRS's excuses for illegally taxing nonincome are meritless.

The IRS's efforts to defend its taxation of nonincome are unavailing for all the reasons discussed in Section I(A)(1) and in the State's opening brief. Tellingly, as the IRS recites its merits argument (at 59-60), it cites only its own Notice 2023-56 (ER-162-63) and its own letter to Attorney General Mayes (ER-178-79) as "authority"—and both of those documents in turn cite and mischaracterize *Maines*.

As the IRS acknowledges (at 61-62), the Arizona Tax Rebate was available only to taxpayers with tax liability of "at least $1." Thus, every single taxpayer who received a rebate received a return of state taxes paid

and—absent a federal deduction that conferred a benefit—was wrongfully taxed on at least that amount. *See* Opp. Br. at 61 (admitting *Maines* holds that only the "excess portion that remains after first reducing state-tax liability … is an accession to the [taxpayers'] wealth").

### 3. The IRS's exclusion determinations were erratic and unreasoned.

The IRS's still-evolving explanations about why it granted exclusions to 17 states but denied Arizona any exclusion continue to support Arizona's claims in this case.

Regarding its February 2023 determinations, the IRS asserts (at 42) that it is not "fruitful to discuss the income qualifications in the 2022 programs enacted during the heart of a declared disaster." Yet when discussing its decision as to Arizona (at 64), the IRS focuses exclusively on income qualifications and defends the decision based on what it "typically requires."

The IRS has never identified any published guidance on the taxability of state refunds other than the February 2023 determinations (IR-2023-23) and the August 2023 guidance (Notice 2023-56). While the IRS now minimizes the February 2023 determinations, it cannot credibly ignore them when characterizing what it "typically requires." And Notice 2023-56—

29

issued after Arizona enacted the Tax Rebate—only validated Arizona's eligibility for an exclusion. *See, e.g.*, ER-167 ("payments made in connection with [a qualified] disaster are presumed to be made in order to promote the general welfare").

The IRS similarly asserts (at 63) that "[p]ayments that have qualified for the general welfare exclusion shared the traits of being directed to low-income individuals or families based on their need and for a specific, welfare-oriented purpose." The IRS neglects to mention that it has never issued specific regulatory guidance on a specific income threshold or any other qualifying criteria. Nor does the IRS mention that it has historically construed "need" to include situational need. *See, e.g.*, Rev. Rul. 98-19, 1998-1 C.B. 840 (1998) (applying general welfare exclusion to payments associated with flood relocation, a situational need).

The disaster relief exclusion codifies exclusions for situational need in connection with qualified disasters, s*ee* 26 U.S.C. § 139, and—as previously discussed—the IRS now represents (at 42) that its purported "forbearance" was "consistent with I.R.C. § 139(b)(4)." Thus, states like Colorado and Idaho that offered refunds with no income cap received treatment "consistent with I.R.C. § 139(b)(4)," ER-281-82 ¶¶ 54-55, while Arizona—with at least some

30

income cap, and with a dependents requirement—was not treated in accord with law.

Nor can the IRS reasonably rely on the COVID emergency as a distinguishing factor, given that Arizona passed its Rebate within the emergency declaration period. This leaves the IRS with characterizing what it calls "the heart of th[e] emergency"—a phrase with no legal significance that is open to dispute and debate. The IRS also notes without argument (at 65) that Arizona's Tax Rebate legislation provided for the payments to be made several months after they were approved. But that does not work as an excuse either, given that the IRS expressly provided for recipients of the 2022 payments to receive exclusions even if the payments were "actually received in 2023." ER-158 (release accompanying Notice 2023-56).

Finally, the IRS continues to tie itself in knots regarding the significance of legislative labels. On the one hand, the IRS states (at 62) that "the label does not change the substantive character of the payment." But on the other hand, the IRS purports (at 66) to find it highly significant that Arizona's legislation referenced "the harmful impacts of inflation" without reciting the term "COVID-19." Opp. Br. at 66; *see also* ER-061 (reciting litany of additional avowals that the IRS faults Arizona for not including in its

31

legislation). The IRS's interest in the content of Arizona's legislation only highlights the State's sovereign interest in this case, while providing no basis for dismissal on the pleadings.

## CONCLUSION

For the foregoing reasons, this Court should reverse the district court's dismissal of Arizona's complaint.

Respectfully submitted this 25th day of July, 2025.

KRISTIN K. MAYES
  ARIZONA ATTORNEY GENERAL

By */s/ Clinten N. Garrett*
Joshua D. Bendor
Alexander W. Samuels
Clinten N. Garrett
Kathryn E. Boughton
OFFICE OF THE ARIZONA
  ATTORNEY GENERAL
2005 N. Central Ave.
Phoenix, AZ 85004
(602) 542-3333
Joshua.Bendor@azag.gov
Alexander.Samuels@azag.gov
Clinten.Garrett@azag.gov
Kathryn.Boughton@azag.gov
ACL@azag.gov

*Counsel for State of Arizona*

## CERTIFICATE OF COMPLIANCE

1.  This brief complies with the type-volume limitation of Circuit Rule 32-1(a) because it contains 6,491 words according to the word-processing system used to prepare the brief.

2.  This brief complies with the typeface and typestyle requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in fourteen-point Book Antiqua type style.

Dated this 25th day of July, 2025.


By */s/ M. McGrath*

## CERTIFICATE OF SERVICE

I certify that I presented the above and foregoing for filing and uploading to the ACMS system which will send electronic notification of such filing to all counsel of record.

Dated this 25th day of July, 2025.

*/s/ M. McGrath*